

# RICHMAN
## LAW & POLICY

1 Bridge Street, Suite 83, Irvington, NY 10533 / 914.693.2018
www.RichmanLawPolicy.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _2/26/2021_

**VIA E-MAIL**                                                          February 16, 2021

Chong S. Park
Ropes & Gray LLP
chong.park@ropesgray.com

Re:   *Lee v. Canada Goose US, Inc.,* Case No. 1:20-cv-09809

Dear Mr. Park,

We write on behalf of Plaintiff Lee in response to your pre-motion letter dated February 8, 2021.

## I. Canada Goose's Claims are Unlawfully False and Deceptive

Canada Goose US, Inc. ("Canada Goose" or "Defendant") sells clothing products made with coyote fur ("the Products"). In order to capitalize on consumer concern for animal welfare, Defendant states on every Product that Canada Goose adheres to "ethical," "sustainable," and "humane" fur sourcing standards. (Complaint ("Compl.") ¶ 4). To further induce consumers to rely on its humane sourcing claims, the Product labels specify that the American and Canadian fur trappers in Canada Goose's supply chain are "strictly regulated by state, provincial and federal standards." (Compl. ¶ 13). This statement is ***literally false***. The Complaint alleges that "there are no U.S. federal laws or regulations that require the humane treatment of coyotes trapped for fur." (Compl. ¶ 19). The Complaint further alleges that Canada Goose's sourcing policy does not prohibit sourcing fur from states with no animal welfare regulations for fur trapping. (*See* Compl. ¶ 20). Defendant's pre-motion letter ("PML") suggests these allegations are not specific enough (PML at 2), but Plaintiff's central allegations are extremely specific, straightforward, and undeniable: namely, that (1) Canada Goose sources from U.S. fur trappers, and (2) that there are no U.S. federal laws or regulations that govern the welfare of animals trapped for fur. At most, Canada Goose can raise a factual dispute about whether it sources from jurisdictions that regulate the welfare of animals trapped for fur; but this factual dispute cannot be resolved on a motion to dismiss. *See e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *51 (E.D.N.Y. Sep. 26, 2016).

Although Plaintiff can point to literally false claims made by Canada Goose, the D.C. Consumer Protection Procedures Act ("CPPA") was explicitly designed to also cover claims that have the "tendency to mislead." *See* D.C. Code §§ 28-3904(e), (f), and (f-1). The Complaint alleges that Canada Goose's claims of "ethical," "sustainable," and "strictly regulated" humane trapping tend to mislead consumers because Canada Goose's fur suppliers use cruel methods that cause strangulation, broken bones, and prolonged psychological stress to the coyotes and other animals who are inadvertently trapped and discarded. (Compl. ¶¶ 18, 24-32). The Complaint further points to consumer perception evidence demonstrating that consumers believe the methods used by Canada Goose's suppliers are inhumane. (Compl. ¶ 43). The Complaint also cites to studies showing that consumers view animal welfare as one of the most important factors in considering

whether animal products are "ethically produced" (Compl. ¶ 39) and "sustainable" (Compl. ¶ 41).

In response, Canada Goose claims that "no reasonable person" would interpret its humane sourcing claims to preclude these practices in its supply chain. (PML at 2). However, under the CPPA, whether statements have a "tendency to mislead" are "questions for the jury." *Mann v. Bahi*, 251 F. Supp. 3d 112, 126 (D.D.C. 2017). Moreover, numerous courts have determined that the types of claims made by Canada Goose may be materially misleading to consumers. *See*, *e.g.*, *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1002 (N.D. Cal. 2013) (regarding "humane" claims); *Organic Consumers Ass'n v. Smithfield Foods, Inc.*, No. 2020 CA 2566 B, 2020 D.C. Super. LEXIS 28, at *16-17 (Dec. 14, 2020) (regarding claims of "strictly controlled" animal husbandry practices).[1] Courts have found that such claims are particularly likely to induce consumer reliance when combined with more "specific messages" about animal welfare practices, such as Defendant's reference to state and federal regulation. *See, e.g.*, *Organic Consumers Ass'n v. Ben & Jerry's Homemade, Inc.*, No. 2018 CA 004850 B, 2019 D.C. Super. LEXIS 1, at *5-7 (Jan. 7, 2019) (regarding humane and sustainable sourcing claims).[2]

## II. Plaintiff Has Standing to Pursue Claims Under State Consumer Protection Statutes

Defendant asserts that Plaintiff does not have standing to bring claims on behalf of unnamed plaintiffs injured outside of Washington, D.C., the jurisdiction where he was injured (PML at 3). However, the Second Circuit has held otherwise when evaluating standing of putative class representatives at the motion to dismiss stage:

> [A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3).

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018); *see also, e.g.*, *Crockrom v. Bank of Am., N.A.*, No. 20-CV-13 (JPO), 2020 U.S. Dist. LEXIS 214826, at *9-10 (S.D.N.Y. Nov. 17, 2020) (Oetken, J.).

## III. Plaintiff Has Sufficiently Pled Common Law Claims

Defendant argues that Plaintiff's express warranty claim should be dismissed because it is duplicative of his claim under the CPPA. Defendant provides no caselaw to support this assertion. To the contrary, courts regularly allow false advertising claims to simultaneously proceed under overlapping theories pursuant to state consumer protection statutes and common law. *See e.g. In*

---

[1] U.S. Federal Trade Commission policy also recognizes that "sustainable" claims are material to consumers and can be interpreted to imply certain specific environmental benefits. *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad.

[2] A CPPA claim will only be dismissed as puffery if it "defies logic." *Pearson v. Chung*, 961 A.2d 1067, 1077 (C.A. D.C. 2008). For example, in *Pearson*, cited by Defendant, the plaintiff argued that a "Satisfaction Guaranteed" sign "was an unconditional warranty that required [the defendants] to honor any claim by any customer, without limitation, based on the customer's determination of whatever would make that customer 'satisfied.'" *Id.* at 1070.

*re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010).

Courts do recognize that express warranty claims and unjust enrichment claims may be duplicative. However, courts acknowledge that "at the pleading stage, when there is uncertainty about how the case will play out, it makes sense to preserve the claim for unjust enrichment and ***permit the plaintiff to plead in the alternative*.**" *Bamford v. Penfold, L.P.*, No. 2019-0005-JTL, 2020 Del. Ch. LEXIS 79, at \*87 (Feb. 28, 2020) (emphasis added). Here, Plaintiff has pled an unjust enrichment theory in the alternative to express warranty. *See e.g., id.* (Compl. Count IV).

Finally, Defendant argues that Plaintiff "fails to identify the state law applicable" to his breach of express warranty and unjust enrichment claims. (PML at 3). This is not true. Plaintiff specifically states that his claims for "breach of express warranty and unjust enrichment [are] under the common law of the states where the products are sold." (Compl. ¶ 103 n.39). Further, Plaintiff does not need to "allege specific facts to satisfy the unique elements of each state's laws" for his common law claims because they are "incorporate[d] by reference [to] the entire complaint." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 U.S. Dist. LEXIS 125999, at \*59 (D. Mass. Aug. 14, 2015).

## IV. Plaintiff Has Standing to Pursue Injunctive Relief

Plaintiff brings this suit under the District of Columbia Consumer Protection Procedures Act ("DC CPPA"). "By its explicit terms the CPPA permits parties to sue on behalf of others for violations of the Act, including those related to consumer goods and services . . . and it permits injunctive relief." *Organic Consumers Ass'n v. General Mills, Inc.*, 2017 D.C. Super. LEXIS 4, \*17 (July 6, 2017). Adopting Defendant's argument would "render large portions of the CPPA superfluous," which is why this argument has been rejected in other cases. *Id.* at \*18; *see also e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (finding standing for consumer plaintiff to pursue injunctive relief).

Similarly, this Court should rule that Plaintiff has standing to pursue injunctive relief on the basis of public policy, as articulated in *Belfiore v. P&G*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015):

> ***Public policy . . . supports the rule that Article III standing exists to seek injunctive relief*** . . . To hold otherwise would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury . . . An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf.

*Id.* at 445 (emphasis added).

**RICHMAN LAW & POLICY**

Kim E. Richman
Jay Shooster
1 Bridge Street, Suite 83
Irvington, NY 10533
(718) 705-4579 (phone)
(718) 228-8522 (fax)
krichman@richmanlawpolicy.com
jshooster@richmanlawpolicy.com

*Counsel for Plaintiff*

The Clerk of Court is directed to enter into the public record
of this action the letter above submitted to the Court by

Plaintiff.

**SO ORDERED.**

2/26/2021

DATE

VICTOR MARRERO, U.S.D.J.