

ROPES & GRAY LLP
2099 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20006-6807
WWW.ROPESGRAY.COM

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2021

February 22, 2021

Chong S. Park
T +1 202 508 4631
chong.park@ropesgray.com

**BY E-MAIL**

The Hon. Victor Marrero
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

Re:   *Lee v. Canada Goose US, Inc.*, Case No. 1:20-cv-09809

Dear Judge Marrero:

We represent Canada Goose US, Inc. ("Canada Goose" or the "Company") in the above-referenced action.  Pursuant to Section II.B.1 of the Court's Individual Practices, on February 8, 2021, Canada Goose delivered to counsel for George Lee ("Plaintiff") a letter identifying the grounds for the Company's anticipated motion to dismiss the complaint filed by Plaintiff on November 20, 2020 in its entirety (the "February 8 Letter").  The February 8 Letter is attached hereto as **Attachment A**.

On February 16, 2021, Plaintiff, through counsel, delivered to Canada Goose a letter in response to the February 8 Letter contesting each of the Company's proposed grounds for dismissal (the "February 16 Letter").  The February 16 Letter is attached hereto as **Attachment B**.

Pursuant to Section II.B.2 of the Court's Individual Practices, we write to notify the Court that the parties have failed to resolve their dispute over the appropriateness of the filing of a motion to dismiss, and that the Company intends to file a motion to dismiss substantially on the grounds set forth in the February 8 Letter.

We appreciate Your Honor's attention to this matter.

Sincerely,

*/s/ Chong S. Park*

Chong S. Park

ROPES & GRAY LLP

- 2 -                                                                 February 22, 2021

cc:

Kim Richman (krichman@richmanlawpolicy.com)
Jay Shooster (jshooster@richmanlawpolicy.com)

# **Attachment A**



ROPES & GRAY LLP
2099 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20006-6807
WWW.ROPESGRAY.COM

February 8, 2021

Chong S. Park
T +1 202 508 4631
chong.park@ropesgray.com

**BY E-MAIL**

Kim Richman
Richman Law Group
8 West 126th Street
New York, New York 10027

Re:   *Lee v. Canada Goose US, Inc.,* **Case No. 1:20-cv-09809**

Dear Mr. Richman:

We represent Canada Goose US, Inc. ("Canada Goose" or the "Company") in the above-referenced action.  Pursuant to Section II.B.1 of the Court's Individual Practices, this pre-motion letter identifies the grounds for the Company's anticipated motion to dismiss the complaint filed by George Lee ("Plaintiff") on November 20, 2020 (the "Complaint" or "Compl.") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

**I.  The Complaint Fails to State a Claim Under the D.C. Consumer Protection Procedures Act**

***The Complaint Fails to Allege Actionable Misleading or Deceptive Statements.***  Plaintiff's claim under the D.C. Consumer Protection Procedures Act ("DC CPPA") fails because the Complaint has not alleged actionable misleading or deceptive statements under the statute. The Complaint focuses on general – and accurate – representations regarding the Company's Fur Transparency Standard™ (the "Standard") set forth in paper hang tags attached to products containing coyote fur.[1]

Specifically, Plaintiff alleges a statement that the Company "only purchase[s] fur from licensed North American trappers strictly regulated by state, provincial and federal standards" is false and misleading for the following reasons: (1) the Company purportedly "allows for sourcing of trappers that operate in jurisdictions that have no regulations regarding the methods of slaughtering trapped animals or the types of traps that may be used"; and (2) "there are no U.S. federal laws or regulations that require

---

[1] The hang tag states, in relevant part, that the Standard (1) "is our commitment to support the ethical, responsible, and sustainable sourcing and use of real fur"; (2) "ensures that all fur sourced by Canada Goose is in accordance with the Agreement of International Humane Trapping Standards (AIHTS) in Canada and the Best Managed Practices (BMP) in the United States"; and (3) "certifies that we never purchase fur from fur farms, never use fur from endangered animals, and only purchase fur from licensed North American trappers strictly regulated by state, provincial and federal standards."  Compl. ¶ 14.

ROPES & GRAY LLP

- 2 -                                                            February 8, 2021

the humane treatment of coyotes trapped for fur." Compl. ¶¶ 17, 19. But the Complaint is wholly devoid of any specific allegation that the Company, in fact, sources from trappers in states that are *not* subject to any regulations, or from trappers *not* regulated by any U.S. federal standards.

Indeed, this statement is not rendered false or misleading merely because certain jurisdictions may purportedly lack specific laws or regulations that, in Plaintiff's subjective opinion, sufficiently prescribe "humane" trapping practices. *See, e.g., Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) ("[P]laintiffs must do more than plausibly allege that a label might be conceivably misunderstood by some few consumers." (internal citation omitted)).[2] Contrary to Plaintiff's allegation, no reasonable person would interpret the Company's broad, general statement that it purchases fur from trappers who are subject to certain regulations and standards in the way proposed by Plaintiff. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011).

Nor has Plaintiff plausibly alleged that the Company "conceal[ed]" and "suppressed" the "true nature" of its sourcing of fur. Compl. ¶¶ 23-34, 59. In fact, the Complaint specifically concedes that the hang tag explicitly disclosed that the Company sources its fur "in accordance with" the standards of the AIHTS and BMP. Compl. ¶ 23. Plaintiff does not allege representations about any additional standards. Given this, no reasonable consumer would have been misled about the precise standards followed by the Company.[3] *See Whiting*, 637 F.3d at 364. While Plaintiff alleges these standards allow for trapping methods he does not consider to be "ethical" and "responsible" (Compl. ¶¶ 23-34), Plaintiff's subjective views do not render the Company's statements misleading or deceptive.

***Plaintiff Cannot State a Claim Based on Non-Actionable Statements.*** Plaintiff's DC CPPA claim also fails because the challenged statements "are too general and subjective in nature to be considered misrepresentations," as their "truth or falsity . . . cannot be precisely determined." *Whiting v. AARP*, 701 F. Supp. 2d 21, 30 (D.D.C. 2010). Such statements cannot form the basis for a claim for unfair trade practice under the DC CPPA. *See Pearson v. Chung*, 961 A.2d 1067, 1076 (D.C. 2008).

## II.   Plaintiff's Remaining Claims Must Be Dismissed[4]

***Claims Brought Under State Consumer Protection Laws.*** Plaintiff's claims under various state consumer protection law statutes must be dismissed for lack of standing because he does not allege

---

[2] Plaintiff alleges that the Company's statement that it uses "licensed" fur trappers is misleading because "such licensing is simply a matter of taking a training course on conservation and trapping systems" (Compl. ¶ 21); but Plaintiff's dissatisfaction with the applicable licensing requirements does not make that statement misleading.

[3] Indeed, while Plaintiff suggests that the Company misled consumers into believing that its standards prohibit certain practices, such as leg-hold traps, as the Complaint concedes, both the AIHTS and BMP disclose the types of traps permitted under the respective standard. Compl. ¶ 25.

[4] Given Plaintiff's failure to assert any individual claims, the state-law claims brought on behalf of the unnamed putative class members must also be dismissed. *See, e.g., Chen v. Dunkin' Brands, Inc.*, 2018 WL 9346682, at *10 (S.D.N.Y. Sept. 17, 2018) ("Because the Court dismisses the individual claims of each of the named plaintiffs, the Court lacks jurisdiction over the state-law class claims of the unnamed putative class members.").

ROPES & GRAY LLP

- 3 -                                February 8, 2021

that he was harmed in any jurisdiction other than Washington D.C.[5] *See Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Plaintiffs do not have an injury traceable to conduct that occurred in any other state . . . and thus, they cannot assert a claim under those states' consumer fraud statutes.").

***Claims for Breach of Express Warranty and Unjust Enrichment.*** Plaintiff's claims for breach of express warranty and unjust enrichment must be dismissed because the Complaint fails to identify the state law applicable to those claims; and those claims rely on the same allegations underlying the DC CCPA claim. *See, e.g, Hines v. Overstock.com, Inc.*, 2013 WL 4495667, at *1, 10-11 (E.D.N.Y. Aug. 19, 2013) (dismissing unjust enrichment claim when complaint "failed to cite the law of a particular state"); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *1, 18 (E.D.N.Y. Sept. 26, 2016) (dismissing unjust enrichment claim as duplicative because it was based on the same allegations underlying the plaintiff's deceptive trade practice and breach of express warranty claims).

***Injunctive Relief.*** Plaintiff lacks standing to seek injunctive relief as he concedes that he will not suffer future harm. Compl. ¶¶ 76-77; *see Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020) (dismissing plaintiff's claims for injunctive relief because a plaintiff cannot rely on past injury to show future harm and noting that by alleging that one would not have purchased a product but for defendant's misrepresentation is "'effectively a concession that plaintiff does not intend to purchase the product in the future'" (citations omitted)).

For the foregoing reasons, the Complaint should be dismissed by the Court.

Sincerely,

*/s/ Chong S. Park*

Chong S. Park

cc: Hon. Victor Marrero (ChambersNYSDMarrero@nysd.uscourts.gov)

---

[5] Under New York's choice of law rules, the choice of law for claims that are "conduct regulating" "is determined by where the plaintiffs' injuries occurred." *In re Rezulin Prod. Liab. Litig.*, 392 F. Supp. 2d 597, 612 (S.D.N.Y. 2005); *Bergeron v. Philip Morris, Inc*., 100 F. Supp. 2d 164, 170 (E.D.N.Y. 2000) (holding that consumer protection laws are considered by New York courts to be "conduct-regulating" as "[t]hese laws seek to prevent deceptive acts and practices . . . that will adversely affect consumers and others").

# **<u>Attachment B</u>**



1 Bridge Street, Suite 83, Irvington, NY 10533 / 914.693.2018
www.RichmanLawPolicy.com

**VIA E-MAIL**　　　　　　　　　　　　　　　　　　　　　　　　February 16, 2021
Chong S. Park
Ropes & Gray LLP
chong.park@ropesgray.com

Re:　　*Lee v. Canada Goose US, Inc.,* Case No. 1:20-cv-09809

Dear Mr. Park,

We write on behalf of Plaintiff Lee in response to your pre-motion letter dated February 8, 2021.

**I. Canada Goose's Claims are Unlawfully False and Deceptive**

Canada Goose US, Inc. ("Canada Goose" or "Defendant") sells clothing products made with coyote fur ("the Products"). In order to capitalize on consumer concern for animal welfare, Defendant states on every Product that Canada Goose adheres to "ethical," "sustainable," and "humane" fur sourcing standards. (Complaint ("Compl.") ¶ 4). To further induce consumers to rely on its humane sourcing claims, the Product labels specify that the American and Canadian fur trappers in Canada Goose's supply chain are "strictly regulated by state, provincial and federal standards." (Compl. ¶ 13). This statement is ***literally false***. The Complaint alleges that "there are no U.S. federal laws or regulations that require the humane treatment of coyotes trapped for fur." (Compl. ¶ 19). The Complaint further alleges that Canada Goose's sourcing policy does not prohibit sourcing fur from states with no animal welfare regulations for fur trapping. (*See* Compl. ¶ 20). Defendant's pre-motion letter ("PML") suggests these allegations are not specific enough (PML at 2), but Plaintiff's central allegations are extremely specific, straightforward, and undeniable: namely, that (1) Canada Goose sources from U.S. fur trappers, and (2) that there are no U.S. federal laws or regulations that govern the welfare of animals trapped for fur. At most, Canada Goose can raise a factual dispute about whether it sources from jurisdictions that regulate the welfare of animals trapped for fur; but this factual dispute cannot be resolved on a motion to dismiss. *See e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *51 (E.D.N.Y. Sep. 26, 2016).

Although Plaintiff can point to literally false claims made by Canada Goose, the D.C. Consumer Protection Procedures Act ("CPPA") was explicitly designed to also cover claims that have the "tendency to mislead." *See* D.C. Code §§ 28-3904(e), (f), and (f-1). The Complaint alleges that Canada Goose's claims of "ethical," "sustainable," and "strictly regulated" humane trapping tend to mislead consumers because Canada Goose's fur suppliers use cruel methods that cause strangulation, broken bones, and prolonged psychological stress to the coyotes and other animals who are inadvertently trapped and discarded. (Compl. ¶¶ 18, 24-32). The Complaint further points to consumer perception evidence demonstrating that consumers believe the methods used by Canada Goose's suppliers are inhumane. (Compl. ¶ 43). The Complaint also cites to studies showing that consumers view animal welfare as one of the most important factors in considering

1

whether animal products are "ethically produced" (Compl. ¶ 39) and "sustainable" (Compl. ¶ 41).

In response, Canada Goose claims that "no reasonable person" would interpret its humane sourcing claims to preclude these practices in its supply chain. (PML at 2). However, under the CPPA, whether statements have a "tendency to mislead" are "questions for the jury." *Mann v. Bahi*, 251 F. Supp. 3d 112, 126 (D.D.C. 2017). Moreover, numerous courts have determined that the types of claims made by Canada Goose may be materially misleading to consumers. *See*, *e.g.*, *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1002 (N.D. Cal. 2013) (regarding "humane" claims); *Organic Consumers Ass'n v. Smithfield Foods, Inc.*, No. 2020 CA 2566 B, 2020 D.C. Super. LEXIS 28, at *16-17 (Dec. 14, 2020) (regarding claims of "strictly controlled" animal husbandry practices).[1] Courts have found that such claims are particularly likely to induce consumer reliance when combined with more "specific messages" about animal welfare practices, such as Defendant's reference to state and federal regulation. *See, e.g.*, *Organic Consumers Ass'n v. Ben & Jerry's Homemade, Inc.*, No. 2018 CA 004850 B, 2019 D.C. Super. LEXIS 1, at *5-7 (Jan. 7, 2019) (regarding humane and sustainable sourcing claims).[2]

## II. Plaintiff Has Standing to Pursue Claims Under State Consumer Protection Statutes

Defendant asserts that Plaintiff does not have standing to bring claims on behalf of unnamed plaintiffs injured outside of Washington, D.C., the jurisdiction where he was injured (PML at 3). However, the Second Circuit has held otherwise when evaluating standing of putative class representatives at the motion to dismiss stage:

> [A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3).

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018); *see also*, *e.g.*, *Crockrom v. Bank of Am., N.A.*, No. 20-CV-13 (JPO), 2020 U.S. Dist. LEXIS 214826, at *9-10 (S.D.N.Y. Nov. 17, 2020) (Oetken, J.).

## III. Plaintiff Has Sufficiently Pled Common Law Claims

Defendant argues that Plaintiff's express warranty claim should be dismissed because it is duplicative of his claim under the CPPA. Defendant provides no caselaw to support this assertion. To the contrary, courts regularly allow false advertising claims to simultaneously proceed under overlapping theories pursuant to state consumer protection statutes and common law. *See e.g. In*

---

[1] U.S. Federal Trade Commission policy also recognizes that "sustainable" claims are material to consumers and can be interpreted to imply certain specific environmental benefits. *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad.

[2] A CPPA claim will only be dismissed as puffery if it "defies logic." *Pearson v. Chung*, 961 A.2d 1067, 1077 (C.A. D.C. 2008). For example, in *Pearson*, cited by Defendant, the plaintiff argued that a "Satisfaction Guaranteed" sign "was an unconditional warranty that required [the defendants] to honor any claim by any customer, without limitation, based on the customer's determination of whatever would make that customer 'satisfied.'" *Id*. at 1070.

*re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 384 (E.D.N.Y. 2010).

Courts do recognize that express warranty claims and unjust enrichment claims may be duplicative. However, courts acknowledge that "at the pleading stage, when there is uncertainty about how the case will play out, it makes sense to preserve the claim for unjust enrichment and ***permit the plaintiff to plead in the alternative***." *Bamford v. Penfold, L.P.*, No. 2019-0005-JTL, 2020 Del. Ch. LEXIS 79, at *87 (Feb. 28, 2020) (emphasis added). Here, Plaintiff has pled an unjust enrichment theory in the alternative to express warranty. *See e.g., id*. (Compl. Count IV).

Finally, Defendant argues that Plaintiff "fails to identify the state law applicable" to his breach of express warranty and unjust enrichment claims. (PML at 3). This is not true. Plaintiff specifically states that his claims for "breach of express warranty and unjust enrichment [are] under the common law of the states where the products are sold." (Compl. ¶ 103 n.39). Further, Plaintiff does not need to "allege specific facts to satisfy the unique elements of each state's laws" for his common law claims because they are "incorporate[d] by reference [to] the entire complaint." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 U.S. Dist. LEXIS 125999, at *59 (D. Mass. Aug. 14, 2015).

## IV. Plaintiff Has Standing to Pursue Injunctive Relief

Plaintiff brings this suit under the District of Columbia Consumer Protection Procedures Act ("DC CPPA"). "By its explicit terms the CPPA permits parties to sue on behalf of others for violations of the Act, including those related to consumer goods and services . . . and it permits injunctive relief." *Organic Consumers Ass'n v. General Mills, Inc.*, 2017 D.C. Super. LEXIS 4, *17 (July 6, 2017). Adopting Defendant's argument would "render large portions of the CPPA superfluous," which is why this argument has been rejected in other cases. *Id*. at *18; *see also e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (finding standing for consumer plaintiff to pursue injunctive relief).

Similarly, this Court should rule that Plaintiff has standing to pursue injunctive relief on the basis of public policy, as articulated in *Belfiore v. P&G*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015):

> ***Public policy . . . supports the rule that Article III standing exists to seek injunctive relief*** . . . To hold otherwise would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury . . . An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf.

*Id*. at 445 (emphasis added).

**RICHMAN LAW & POLICY**

/s/ Kim E. Richman

Kim E. Richman
Jay Shooster
1 Bridge Street, Suite 83
Irvington, NY 10533
(718) 705-4579 (phone)
(718) 228-8522 (fax)
krichman@richmanlawpolicy.com
jshooster@richmanlawpolicy.com

*Counsel for Plaintiff*

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Defendant.

**SO ORDERED.**

2/26/2021
DATE

VICTOR MARRERO, U.S.D.J.

4