USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/29/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
GEORGE LEE, on behalf of himself    :
and all others similarly situated,   :
                          :
              Plaintiff,   :
                          :   20 Civ. 9809 (VM)
   - against -            :
                          :   **DECISION AND ORDER**
CANADA GOOSE US, INC.,        :
                          :
             Defendant.   :
---------------------------------------X
**VICTOR MARRERO, United States District Judge.**

Plaintiff George Lee ("Plaintiff") brings this putative class action, on behalf of himself and all others similarly situated, against Canada Goose US, Inc. ("Canada Goose" or "Defendant"), alleging violations of the District of Columbia Consumer Protection Procedures Act ("Count One") and state consumer protection statutes ("Count Two"), breach of express warranty ("Count Three"), and unjust enrichment ("Count Four") in the alternative. (See "Complaint," Dkt. No. 1.) The claims stem from Defendant's alleged misrepresentations regarding the sourcing of coyote fur for certain Canada Goose jackets (the "Products"). Plaintiff purports to represent a class of "[a]ll consumers who purchased the Products within the United States during the statute of limitations period and until the date of class certification," excluding

Defendant and the judicial staff involved in this action, as well as their respective affiliates.[1] (Id. ¶¶ 81, 83.)

Now before the Court is Defendant's premotion letter, dated February 8, 2021, which the Court construes as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[2] (See "Motion," Dkt. No. 11.) The Court also received Plaintiff's opposition letter dated February 16, 2021. (See "Opposition," Dkt. No. 12.) For the reasons stated herein, the Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

A. FACTS[3]

In November 2017, Plaintiff Lee, a citizen of California, purchased a black Canada Goose Chateau Parka with coyote fur trim from a store located in Washington, D.C. At the time of the purchase, Plaintiff resided in Maryland. Plaintiff alleges that when he purchased the jacket, he relied on Canada Goose's representations that the fur on the jacket was sourced using ethical and humane trapping methods.

---

[1] Plaintiff also includes "a subclass of all persons who purchased Canada Goose's Products . . . within the District of Columbia during the Class Period." (Complaint ¶ 82.)

[2] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming the district court's ruling deeming the exchange of letters as the motion itself).

[3] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Plaintiff, as required under the standard set forth in Section II, infra.

Defendant Canada Goose is an outerwear company that, as relevant here, "produces, markets, and distributes clothing products, many of which contain fur trim." (Complaint ¶ 3.) Defendant's principal place of business is New York City, where it maintains its sole office in the United States.

Plaintiff alleges that because of increasing consumer demand for ethically sourced products, Canada Goose attempts to cultivate an image that its fur products are sourced using humane, sustainable, and ethical practices, when in fact they are not. In particular, a paper hang tag attached to the Products contains the following alleged misrepresentations regarding Canada Goose's fur-sourcing practices:

- "The Canada Goose Fur Transparency StandardTM is our commitment to support the ethical, responsible, and sustainable sourcing and use of real fur";

- "The first traceability program to cover the wild habitat, it ensures that all fur sourced by Canada Goose is in accordance with the Agreement of International Humane Trapping Standards (AIHTS) in Canada and the Best Managed Practices (BMP) in the United States, and is fully traceable throughout the supply chain"; and

- "The standard certifies that we never purchase fur from fur farms, never use fur from endangered animals, and only purchase fur from licensed North American trappers strictly regulated by state, provincial and federal standards."

(Complaint ¶ 14.) These statements are misleading, according to Plaintiff, because they suggest that the fur-sourcing practices used by Canada Goose trappers "prevent the

infliction of extreme pain or distress on animals trapped for its fur products" when they do not. (See id. ¶ 15.) Plaintiff alleges that Canada Goose knows that consumers are increasingly committed to purchasing products marketed as ethical and sustainable. Plaintiff quotes a statement on Canada Goose's website that reads: "Today's consumers want to know more about the sustainability of fur and animal welfare and demand more transparency to make informed purchasing decisions." (Id. ¶ 36.) Yet, consumers lack the skills and resources to determine whether products are ethically sourced on their own. Thus, Canada Goose capitalizes on consumers' ignorance of the fur industry by misrepresenting the fur-sourcing methods it uses to sell more products.

1.   "Ethical, Responsible, and Sustainable" Sourcing

Plaintiff alleges that the use of the words "ethical" and "sustainable" mislead consumers regarding the trapping methods used to source Canada Goose's fur. Plaintiff cites studies indicating that consumers share significant "concern about the treatment of animals used in consumer products," consider "animal welfare" to be one of the most important factors in whether a product is "ethically produced," and consider the term "sustainably produced" to encompass goods "produced according to higher animal welfare standards." (Id. ¶¶ 37, 39, 41.) In other words, Plaintiff alleges that

consumers likely interpret the representations at issue here to mean that Canada Goose sources fur in ways that prioritize the humane treatment of animals.

But in reality, according to Plaintiff, "Canada Goose's suppliers use cruel methods that cause strangulation and broken bones to coyotes and other animals who are inadvertently trapped and discarded." (Complaint ¶ 4.) Plaintiff identifies two inhumane trapping methods in particular used to source Canada Goose fur: leg traps and snares.

Leg traps, opposed by several veterinary associations, are inhumane because they can cause significant harm, including death, to trapped animals. Plaintiff contends that even alternatives to traditional leg traps, including padded and offset leghold traps, are problematic because they cause "severe distress and injuries," including ligament damage in up to 20% of cases and prolonged psychological distress. (Id. ¶¶ 26-27.) For example, only 4% of coyotes caught in padded leghold traps suffered no injury at all. Furthermore, many of these injuries can have long-term effects for animals released after trapping. According to Plaintiff, these traps are widely used by trappers in the United States and Canada.

Similarly, Plaintiff alleges that coyotes are often captured and killed using snares -- metal nooses which kill

the animals through strangulation. Snares, like leg traps,
are considered inhumane "by wildlife biologists,
veterinarians, and animal welfare experts" and have been
banned in several states. (Id. ¶ 28.) Studies on the use of
snares and leghold traps indicate that up to 67% of the
animals caught in the traps are not the intended targets.
Wild animals and even pets are inadvertently caught.
Plaintiff alleges that snares are used "in all Canadian
provinces and across the U.S." (Id.)

   2.   AIHTS and BMP Standards

   Regarding AIHTS and BMP standards, Plaintiff alleges
that "even if Canada Goose did ensure compliance," the
statements would be misleading because "these standards
themselves authorize inhumane trapping practices that
reasonable consumers would perceive as neglectful and unduly
harmful." (Complaint ¶ 23.) For instance, AIHTS standards
tolerate traps in which up to 20% of animals tested
demonstrate physical and emotional suffering. Under the BMP,
that figure is 30%. Moreover, both the AIHTS and BMP allow
for the use of leg-hold traps, which, according to Plaintiff,
"have been banned in 57 countries" and several states and are
inhumane for the reasons discussed above. (Id. ¶¶ 25-26.)
Likewise, the use of snares -- also allegedly inhumane -- is
not prohibited by either the AIHTS or BMP. Plaintiff points

out that AIHTS standards require that any device used to kill animals must render them "irreversibly unconscious within 300 seconds," which snares do not consistently accomplish. (Id. ¶ 29.) The animals that do not die immediately suffer painful injuries including dehydration or starvation, compounded by the fact that in many cases snares may be left unchecked for lengthy periods of time.

3. <u>Licensing and Regulation</u>

Plaintiff insists that Canada Goose's statements regarding licensure of its trappers and compliance with governmental regulations are also misleading. While Canada Goose states that it "only purchase[s] fur from licensed North American trappers strictly regulated by state, provincial and federal standards" (Complaint ¶ 14), Plaintiff alleges that "Canada Goose allows for sourcing from trappers that operate in jurisdictions that have no regulations regarding the methods of slaughtering trapped animals or the types of traps that may be used" (<u>id.</u> ¶ 17). Moreover, "there are no U.S. federal laws or regulations that require the humane treatment of coyotes trapped for fur." (<u>Id.</u> ¶ 19.) At the state level, Plaintiff alleges that over 75% of states do no regulate fur trapping at all, and a majority of states do not prohibit any types of traps, including cruel ones. Plaintiff alleges that Canada Goose has not indicated "that furs from these states

are prohibited from its supply chain." (Id. ¶ 20.) Canada Goose's representation regarding the licensure of its trappers is also misleading, according to Plaintiff, because licensing from the North American Fur Industry Communications group is "simply a matter of taking a training course on conservation and trapping systems, and then purchasing the license." (Id. ¶ 21.) Moreover, even under existing rules, regulation is difficult because various enforcement agencies "struggle to fulfill their mandates." (Id. ¶ 22.)

B.   PROCEDURAL HISTORY

Consistent with the Court's Individual Practices, on February 8, 2021, Canada Goose wrote to Plaintiff regarding an anticipated motion to dismiss the Complaint. By letter dated February 16, 2021, Plaintiff responded to the Motion. Defendant advised the Court by letter dated February 22, 2021 that the parties' letter exchange had failed to resolve their dispute. (See Dkt. No. 13.) On February 26, 2021, the Court advised the parties that it would construe Defendant's premotion letter as a motion to dismiss and would resolve the Motion on the basis of the letters and the material in the record. (See Dkt. No. 14.)

C.   THE PARTIES' ARGUMENTS

Defendant argues that Count One fails because the allegedly misleading statements are all accurate and because

the Complaint does not allege that any Canada Goose fur is obtained from trappers in states or regions *not* subject to regulations. Moreover, Defendant insists that it has not concealed or suppressed the true nature of its sourcing and that its representations are, again, accurate. Further, Defendant contends that Plaintiff's "subjective views" regarding fur-trapping standards "do not render the Company's statements misleading or deceptive." (Motion at 2.) Lastly, Defendant argues that the allegedly misleading statements are nonactionable because they are too general for their truth or falsity to be determined.

On Plaintiff's remaining claims, Canada Goose contends that Plaintiff has not alleged an injury anywhere outside of Washington, D.C., and therefore he lacks standing to bring claims under the various other state consumer-protection statutes identified in Count Two. Defendant argues that the claims for breach of express warranty and unjust enrichment in Counts Three and Four must be dismissed because the Complaint does not identify the particular state laws applicable and because the claims are duplicative. Lastly, Defendant argues that Plaintiff lacks standing to seek injunctive relief because he has not alleged any risk of future harm.

Plaintiff responds that the Complaint specifically alleges "literally false" statements, and these allegations are enough to survive a motion to dismiss as to Count One. (Opposition at 1.) Plaintiff insists that the statement that Canada Goose sources fur from trappers who are subject to "federal standards" is literally false because there are no U.S. federal laws or regulations that require humane coyote trapping. Plaintiff further insists that the Complaint alleges other statements that, while not literally false, tend to mislead consumers regarding the practices employed by trappers who source Canada Goose fur.

Plaintiff argues that he has standing to assert claims under the state consumer-protection statutes in Count Two at this stage, and that any issues regarding standing on behalf of out-of-state class members should be resolved at the class-certification stage. Regarding his common-law claims in Counts Three and Four, Plaintiff argues that he can pursue each as alternative theories of recovery, and that, contrary to Defendant's argument, he has identified the applicable state laws and no further specificity is required. Lastly, Plaintiff argues that he has standing to pursue injunctive relief under the District of Columbia Consumer Protection Procedures Act, on behalf of the class. Plaintiff further

insists that he should be granted standing to pursue injunctive relief as a matter of public policy.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May

19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

## III. DISCUSSION

The motion to dismiss Count One is denied with respect to Canada Goose's statement that it is committed to "ethical, responsible, and sustainable sourcing" because Plaintiff has plausibly alleged that this statement has the tendency to mislead a reasonable consumer. (See Complaint ¶ 14.) However, Count One is dismissed insofar as it stems from Canada Goose's statements regarding compliance with AIHTS and BMP standards, and sourcing from licensed fur trappers regulated by state, provincial, and federal standards, because these statements are accurate and therefore unlikely to mislead. Count One is also dismissed insofar as it charges a violation of Section 28–3901(h) of the District of Columbia Consumer Protection Procedures Act because Plaintiff has failed to allege intent.

The Court declines to dismiss the state law consumer-protection claims in Count Two, reserving the issue of standing as to these claims for the class-certification stage. Likewise, the Court will not dismiss Plaintiff's

breach-of-express-warranty claim in Count Three because Plaintiff was not required to identify the state laws applicable to the claim, nor does the Court find the claim duplicative of the consumer-protection claims. Nevertheless, the Court dismisses Count Four because unjust enrichment is unavailable when an express agreement governs the dispute. The Court also dismisses Plaintiff's request for injunctive relief because he has not alleged any risk of future harm.

A.    COUNT ONE: DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT ("CPPA")

Under the CPPA, it is a violation to engage in an unfair or deceptive trade practice, "whether or not any consumer is in fact misled," including to:

> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
> . . .
> (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
> (e) misrepresent as to a material fact which has a tendency to mislead;
> . . .
> (f) fail to state a material fact if such failure tends to mislead;
> (f-1) Use innuendo or ambiguity as to a material fact, which has a tendency to mislead;
> . . .
> (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; . . . .

D.C. Code § 28-3904. The CPPA is to "be construed and applied liberally to promote its purpose." Id. § 28-3901(c). In assessing the plausibility of Plaintiff's claims, the Court must "consider an alleged unfair trade practice 'in terms of how the practice would be viewed and understood by a reasonable consumer.'" Saucier v. Countrywide Home Loans, 64 A.3d 428, 442 (D.C. 2013) (quoting Pearson v. Chung, 961 A.2d 1067, 1075 (D.C. 2008)).

1. Sections 28-3904(e), (f), (f-1)

To state a claim of unfair trade practices under the subsections (e) and (f), a plaintiff must establish that the defendant "made a material misrepresentation or omission that has a tendency to mislead." Alicke v. MCI Commc'ns Corp., 111 F.3d 909, 912 (D.C. Cir. 1997) (citation omitted). Likewise, it is illegal under subsection (f-1) to "use innuendo or ambiguity as to a material fact, which has a tendency to mislead." E.M. v. Shady Grove Reprod. Sci. Ctr. P.C., 496 F. Supp. 3d 338, 411 (D.D.C. 2020) (quoting D.C. Code § 28-3904(f-1)).

Plaintiff "need not allege or prove intentional misrepresentation or failure to disclose to prevail on a claimed violation of § 28-3904(e)." Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1073 (D.C. 2008). However, the plaintiff must establish that a

14

misrepresentation was made. <u>Saucier</u>, 64 A.3d at 442. Similarly, "[u]nder Section 28-3904(f), plaintiff need not prove intentional failure to disclose in order to prevail, but must prove only that defendant failed to disclose a material fact." <u>Beck v. Test Masters Educ. Servs. Inc.</u>, 994 F. Supp. 2d 90, 96 (D.D.C. 2013). Nor is proof of intentional misrepresentation required to make out a claim under subsection (f-1). <u>Shady Grove</u>, 496 F. Supp. 3d at 411.

The Court finds that all but one of the alleged misrepresentations are nonactionable under this framework. First, Plaintiff does not allege that Canada Goose sources fur from trappers who violate AIHTS and BMP standards. Rather, Plaintiff argues that Canada Goose's proclaimed compliance with the standards is misleading because "these standards themselves authorize inhumane trapping practices." (Complaint ¶ 23.) Likewise, Plaintiff does not allege that Defendant misrepresented the truth by stating that it "only purchase[s] fur from licensed North American trappers strictly regulated by state, provincial and federal standards." (<u>Id.</u> ¶ 14.) Rather, Plaintiff argues that this statement is misleading because "such licensing is simply a matter of taking a training course on conservation and trapping systems, and then purchasing the license," and because "enforcement bodies struggle" to uphold those standards that do exist. (<u>Id.</u> ¶¶

21-22.) In other words, Plaintiff does not allege that Canada Goose's statements regarding compliance, regulation, and licensing are inaccurate, and instead argues that compliance, regulation, and licensing are insufficient and unsatisfactory by some accounts.

These allegations fail to make out a claim under the CPPA. That the relevant standards may nonetheless be inhumane or inadequate does not render Defendants' representations as to compliance false or misleading. And "a reasonable consumer generally would not deem an accurate statement to be misleading, and hence, such statement generally would not be actionable." Saucier, 64 A.3d at 442 (dismissing claims under § 28-3904(e), (f)) (citing Whiting v. AARP, 701 F. Supp. 2d 21 (D.D.C. 2010)). Thus, the Court finds that Plaintiff has not established a claim under subsections (e), (f), or (f-1) because Plaintiff has not alleged that Canada Goose's statements regarding compliance, licensing, and regulations are inaccurate.[4]

Plaintiff's claim that "there are no U.S. federal laws or regulations that require the humane treatment of coyotes

---

[4] Likewise, Plaintiff alleges that AIHTS standards do not prohibit snares, but require that devices used to kill coyotes render the animals unconscious within 300 seconds, which snares do not always accomplish. However, this inconsistency within AIHTS standards does not constitute noncompliance on Canada Goose's part, nor does it render Canada Goose's representation that it complies with AIHTS standards inaccurate or misleading.

trapped for fur" fares no better. (<u>See</u> Complaint ¶ 19.) Canada
Goose does not represent that it is subject to federal law *in
the United States*. Instead, Defendant represents that it
sources fur from "North American trappers strictly regulated
by state, provincial and federal standards." (<u>Id.</u> ¶ 14.)
Indeed, the word "federal" could refer to federal laws in
Canada. Thus, the nonexistence of U.S. federal standards does
not render the statement -- that Canada Goose fur is sourced
from trappers regulated "by state, provincial and federal
standards" -- false or misleading. And, again, the alleged
inadequacy of the standards imposed is not enough to render
the statements actionable under the CPPA. <u>See</u>, <u>e.g.</u>, <u>Whiting</u>,
701 F. Supp. 2d at 30 (dismissing a CPPA claim because
"[q]uite simply, there is no misrepresentation here, and no
reasonable consumer would have been mislead"); <u>see</u> <u>also</u>
<u>Chambers v. NASA Fed. Credit Union</u>, 222 F. Supp. 3d 1, 15
(D.D.C. 2016) ("In the absence of any misrepresentation,
Chambers' claims under the D.C. . . . Consumer Protection
Act[] must be dismissed.").[5]

---

[5] The Court is likewise unpersuaded that a plausible claim is
made out based on Plaintiff's allegation that "Canada Goose allows
for the purchase of fur from trappers that operate in jurisdictions
that have no laws or regulations," and "Canada Goose has provided no
indication that furs from these states are prohibited from its supply
chain." (Complaint ¶¶ 4, 20.) To "allow" or "not prohibit" certain
fur-sourcing is not the same as actively relying on unregulated
trapping methods. To sufficiently make out a misrepresentation,
Plaintiff needed to allege that Canada Goose sourced fur from

Nevertheless, the Court denies Defendant's motion to dismiss this claim in its entirety because Plaintiff has plausibly alleged that one of Canada Goose's statements is misleading to reasonable customers. Canada Goose avers that it is committed to supporting "the ethical, responsible, and sustainable sourcing and use of real fur." (Complaint ¶ 14.) Though the allegations are thin, viewing the Complaint in the light most favorable to Plaintiff, the Court finds that the allegations support the reasonable inference that Canada Goose's purported commitment to "ethical" fur sourcing is misleading because Canada Goose obtains fur from trappers who use allegedly inhumane leghold traps and snares. Plaintiff asserts that leghold traps "cause severe distress and injuries to animals," including bone fractures, tendon and ligament damage, lost claws, dislocated joints, swelling, and hemorrhaging. (Id. ¶ 26.) Likewise, Plaintiff alleges that the use of snares is widely considered inhumane by industry professionals. These allegations make plausible the conclusion that leghold traps and snares are inhumane, and otherwise raise factual disputes not appropriate for resolution at this stage.

---

unregulated states or sources, not that such sourcing is a possibility. At the pleading stage, it is Plaintiff's burden to state a plausible claim for relief, not Defendant's burden to refute one. See Iqbal, 556 U.S. at 678.

Though Plaintiff does not explicitly allege that Canada Goose sources fur from coyotes trapped using these methods, the Court is satisfied that such a conclusion can be drawn reading the Complaint in the light most favorable to Plaintiff. The Complaint alleges that snares are used "in all Canadian provinces and across the U.S." (id. ¶ 28) and that leg traps "are widely used in the U.S. and Canada, including by trappers who abide by the standards cited by Canada Goose" (id. ¶ 27). Plaintiff further alleges that "trapping methods used by Canada Goose suppliers cause completely unnecessary suffering and death for countless animals and are not 'ethical' or 'sustainable.'" (Id. ¶ 32.) These allegations support the reasonable inference that Canada Goose obtains fur from trappers whose methods are inhumane, despite its outward commitment to "ethical" fur sourcing.

The Court is further persuaded that the statement -- and related omission regarding Canada Goose's true fur-sourcing methods -- is material. Plaintiff alleges that reasonable consumers consider "animal welfare" to be an important factor in whether a product is "ethically produced," and that consumer-perception research indicates that terms such as "sustainably produced" are perceived as signaling compliance with "higher animal welfare standards." (Id. ¶¶ 39, 41.) These allegations are enough to establish at the pleading stage

that "a significant number of unsophisticated consumers would find that information important in determining a course of action." <u>Krukas v. AARP, Inc.</u>, 376 F. Supp. 3d 1, 39 (D.D.C. 2019). Thus, the Court finds that violations of subsections (e), (f), and (f-1) have been adequately pled with respect to Canada Goose's statement that it is committed to "ethical" and "sustainable" fur sourcing.[6]

   2.   <u>Sections 28-3904(a) and (d)</u>

Subsection (a) makes it a violation to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have." D.C. Code § 28-3904(a). Subsection (d) makes it a violation to "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another." <u>Id.</u> § 28-3904(d).

For reasons already stated, the claims under these subsections are dismissed as to Canada Goose's accurate

---

[6] The Court rejects Defendant's arguments that its statements are "too general and subjective" to form the basis of a CPPA claim. (<u>See</u> Motion at 2.) To the contrary, the statement that Canada Goose is committed to "the ethical, responsible, and sustainable sourcing and use of real fur" (Complaint ¶ 14) is measurable and discernable, not "outrageous" or "generalized." <u>Margolis v. Haul Int'l, Inc.</u>, No. 2007CA005245B, 2009 WL 5788369 (D.C. Super. Ct. Dec. 17, 2009) (citation omitted). Stated differently, the statement is actionable because "it hardly is a superlative that can only be interpreted as an exaggeration, and it plainly is not the same as saying something is the 'best' or the 'most.'" <u>Id.</u>

statements regarding compliance with AIHTS and BMP standards, state, provincial and federal regulations, and licensing requirements. However, insofar as the claims are based on Canada Goose's representation that it is committed to ethical and sustainable fur-sourcing, the claims may proceed.

### 3. Section 28-3904(h)

Subsection (h) makes it a violation to "advertise goods or services . . . without the intent to sell them as advertised or offered." D.C. Code § 28-3904(h). The Court dismisses Plaintiff's claim under this subsection because Plaintiff has failed to plausibly allege that Defendant advertised its compliance with ethical and humane fur-trapping standards without the intent to actually comply. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff alleges that Canada Goose represented it would comply with ethical and humane standards in order to gain more customers. (See, e.g., Complaint ¶¶ 11-12) However, he nowhere alleges that Canada Goose did not *intend* to comply with these standards. Nor can the Court infer such intent from the allegations. In fact, Plaintiff's allegations could support the opposite conclusion because Canada Goose would, presumably, benefit from satisfying prospective customers

through compliance. Without additional allegations of Defendant's intent, Plaintiff's claim under subsection (h) fails. See, e.g., Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 130 F. Supp. 3d 236, 268 (D.D.C. 2015) (dismissing a Section 28-3904(h) claim because "the Court is unable to discern from the factual allegations of [the] complaint anything that would nudge [the] assertion that Defendants advertised coverage that *they never intended to provide*, from the merely possible to the plausible" (emphasis added)) (citing Grayson v. AT & T Corp., 15 A.3d 219, 252 (D.C. 2011) (holding that the plaintiff failed to adequately allege a Section 28-6904(h) claim because he "did not provide any facts that show the unlawful intent of appellees")). Thus, the Court dismisses Count One insofar as it alleges a violation of Section 28-3904(h) of the CPPA.

B.   COUNT TWO: STATE CONSUMER-PROTECTION STATUTES

Defendant argues that Plaintiff's state-law claims "must be dismissed for lack of standing because he does not allege that he was harmed in any jurisdiction other than Washington, D.C." (Motion at 2-3.) However, "courts in this Circuit are divided on the precise question at issue here: whether a named plaintiff in a putative class action can assert claims under state laws other than those of the states where they

themselves suffered injury." <u>Morrow v. Ann Inc.</u>, No. 16 Civ. 3340, 2017 WL 363001, at *5 (S.D.N.Y. Jan. 24, 2017).

Defendant is correct that some courts in this district have dismissed claims on this basis. <u>See</u>, <u>e.g.</u>, <u>Simington v. Lease Fin. Grp., LLC</u>, No. 10 Civ. 6052, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012). Nevertheless, this Court declines to do so here. "[T]here has been a growing consensus among district courts that class certification is 'logically antecedent,' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first." <u>Blessing v. Sirius XM Radio Inc.</u>, 756 F. Supp. 2d 445, 451 (S.D.N.Y. 2010) (examining cases); <u>see also</u> <u>Morrow</u>, 2017 WL 363001, at *6 (discussing the division among district courts but reasoning that the "prudent" approach "is to defer consideration of this issue to the class certification stage"). The Court follows this growing consensus and reserves decision on Plaintiff's standing to allege violations of state consumer-protection statutes on behalf of the class until the class-certification stage.

C.   <u>COUNTS THREE AND FOUR: BREACH OF WARRANTY AND UNJUST ENRICHMENT</u>

As an initial matter, the Court is unpersuaded by Defendant's argument that the breach-of-warranty and unjust-

enrichment claims should be dismissed because "the Complaint
fails to identify the state law applicable to those claims."
(See Motion at 3.) Defendant cites Hines v. Overstock.com,
Inc., in which the court dismissed a claim for unjust
enrichment in part because the complaint failed to identify
the particular state laws applicable to the claim. No. 09
Civ. 991, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013). However,
the Hines Court dismissed only an unjust-enrichment claim,
not a breach-of-express-warranty claim. Regardless, the Court
is not persuaded by the reasoning in Hines. Like the court in
Allianz Global Investments GmbH v. Bank of America Corp.,
this Court finds more persuasive recent decisions determining
that identification of specific state laws is unnecessary at
the pleading stage. 463 F. Supp. 3d 409, 433 n.22 (S.D.N.Y.
2020) (citing In re Propranolol Antitrust Litig., 249 F. Supp.
3d 712, 729 (S.D.N.Y. 2017) ("[t]he Court is persuaded that
such identification is not necessary at the pleading stage
because the 'elements of unjust enrichment are similar in
every state'" and "defendants have made no showing that any
differences in the various state laws are material at this
early stage" (citations omitted)); In re Credit Default Swaps
Antitrust Litig., No. 13 MD 2476, 2014 WL 4379112, at *18
(S.D.N.Y. Sept. 4, 2014) (same).

The Court is likewise unpersuaded by Defendant's argument that the breach-of-express-warranty claim is duplicative of the CPPA claim. In the District of Columbia, "[t]he elements of a breach of express warranty, or contract, claim are: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" <u>Wetzel v. Capital City Real Estate</u>, LLC, 73 A.3d 1000, 1005 (D.C. 2013) (citation omitted).[7] Plaintiff's breach-of-express-warranty claim stems from the allegedly false representations on the hang tag attached to Canada Goose's Products. While premised on the same factual allegations, the CPPA claim is statutory, unlike the breach-of-warranty claim. Therefore, each claim can exist independently of the others, and dismissal is unwarranted. <u>E.g.</u>, <u>Jacobson v. Hofgard</u>, 168 F. Supp. 3d 187, 207 (D.D.C. 2016) (concluding that the CPPA and breach-of-contract claims were not duplicative and denying dismissal of

_____

[7] The Court looks to the law of the District of Columbia to evaluate Plaintiff's state-law claims, because that is where the injury occurred. <u>E.g.</u>, <u>Watts v. Jackson Hewitt Tax Serv. Inc.</u>, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (applying New York law to a consumer-protection dispute because "the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered") (citing <u>Krock v. Lipsay</u>, 97 F.3d 640, 646 (2d Cir. 1996); <u>Sack v. Low</u>, 478 F.2d 360, 365 (2d Cir. 1973)). Plaintiff here was allegedly injured in that he "purchased the Product, paid the requested price, and received less than what [was] bargained and/or paid for." (Complaint ¶ 107.) While Plaintiff was a Maryland resident at the time, the purchase, payment, and receipt of the Product all occurred in the District of Columbia.

the CPPA claim); <u>Parr v. Ebrahimian</u>, 774 F. Supp. 2d 234, 243 (D.D.C. 2011) (denying dismissal of a negligence per se claim as duplicative of a CPPA claim because each claim was based on the alleged violation of separate duties).

Nevertheless, the court dismisses Plaintiff's unjust-enrichment claim because such a claim is unavailable when there is an express agreement governing the dispute. <u>Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.</u>, 357 F.3d 62, 69 (D.C. Cir. 2004) ("[T]here can be no claim for unjust enrichment when an express contract exists between the parties."). Thus, insofar as Plaintiff alleges that an express warranty governs, the unjust enrichment claim is unavailable. Furthermore, pleading unjust enrichment in the alternative is permitted only when there is "an allegation that there is no valid contract." <u>United States v. Kellogg Brown & Root Servs., Inc.</u>, 800 F. Supp. 2d 143, 160 (D.D.C. 2011) (dismissing an unjust-enrichment claim pled in the alternative because "[t]he liberal pleading approach of the Federal Rules allows a plaintiff to plead alternative claims, but those claims must have some basis on which relief could be granted"). There is no dispute that an express warranty was made here. Consequently, the claim for unjust enrichment must be dismissed.

D.   STANDING TO PURSUE INJUNCTIVE RELIEF

The Court finds that Plaintiff lacks standing to seek injunctive relief because he does not allege any injury that is "actual and imminent, not conjectural or hypothetical." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); see also Beck v. Test Masters Educ. Servs., Inc., No. Civ. 04-1391, 2012 WL 10817176, at *7 (D.D.C. Sept. 25, 2012), modified on reconsideration, 289 F.R.D. 374 (D.D.C. 2013) ("[T]o prevail on their claim for injunctive relief under the CPPA, plaintiffs must establish a 'likelihood of future violations' of the CPPA by [the defendant].").

Plaintiff alleges that he "would not have purchased the Product if he had known that contrary to Canada Goose's representations, the Products included fur from suppliers permitted to engage in inhumane and unsustainable trapping practices." (Complaint ¶ 76.) Moreover, the lawsuit makes clear that Plaintiff is presently aware of the misrepresentations he alleges, and he is not at any "actual" -- much less "imminent" -- threat of future injury. See, e.g., Kurtz v. Costco Wholesale Corp., 818 F. App'x 57, 61 (2d Cir. 2020) (citing Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018) ("As plaintiff concedes, now that he knows of defendants' alleged deception and false advertising, he is no longer likely to purchase another of defendants'

products ever again. Accordingly, he has no standing under Article III to enjoin the defendants' sales practices" (internal quotation marks, brackets, ellipsis, and citation omitted)).

Contrary to Plaintiff's suggestion, "[t]here is no exception to demonstrating future injury when the plaintiff is pursuing a class action." Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)); see also Lewis v. Casey, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured." (internal quotation marks and citation omitted)).[8] Here,

---

[8] The Court finds unpersuasive Plaintiff's argument that the CPPA "permits parties to sue on behalf of others for violations of the Act, including those related to consumer goods and services, and it permits injunctive relief." (Motion at 3 (quoting Organic Consumers Ass'n v. General Mills, Inc., 2017 D.C. Super. LEXIS 4, *17 (D.C. Super. Ct. July 6, 2017).) That the CPPA "permits" parties to seek injunctive relief on behalf of others does not relieve such parties of their obligation to establish Article III standing. Moreover, while the Court acknowledges that certain District of Columbia courts have conferred standing to seek injunctive relief in contexts similar to this one, the Court is not bound by that local standing jurisprudence. See City of Los Angeles v. Lyons, 461 U.S. 95, 113 (1983) (concluding that the plaintiff did not have Article III standing to seek injunctive relief but noting that "the state courts need not impose the same standing or remedial requirements that govern federal court proceedings"). Nor is the Court persuaded to confer standing based on public policy concerns. Plaintiff has asserted claims for other forms of relief, some of which may proceed as set forth above. Neither he nor the class has been denied an opportunity to realize the protections afforded consumers by the CPPA.

"[b]ecause Plaintiff does not individually have standing to seek injunctive relief, he also lacks standing to seek injunctive relief on behalf of the class." Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 460 (S.D.N.Y. 2020) (citing Simon, 426 U.S. at 40 n.20; Buonasera, 208 F. Supp. 3d at 564)).

## IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Canada Goose Inc. (Dkt. No. 11) is **GRANTED** in part and **DENIED** in part. In particular, the alleged violation of the District of Columbia Consumer Protection Procedures Act § 28-3904(h) in Count One is dismissed, but the alleged violations of all other subsections may proceed insofar as they stem from Defendant's statements regarding its commitment to "ethical" and "sustainable" fur-trapping standards. The motion to dismiss the state consumer-protection claims alleged in Count Two is DENIED. The motion to dismiss the alleged breach-of-express-warranty in Count Three is also DENIED. However, the motion to dismiss Count Four for unjust enrichment is GRANTED, and the motion to dismiss the claim for injunctive relief is also GRANTED.

**SO ORDERED.**
Dated:    New York, New York
          29 June 2021

_____
Victor Marrero
U.S.D.J.